**MICHAEL A. CONGER, ESQUIRE (State Bar No. 147882)**
**LAW OFFICE OF MICHAEL A. CONGER**
16236 San Dieguito Road, Suite 4-14
**Mailing:** P.O. Box 9374
Rancho Santa Fe, California 92067
Telephone: (858) 759-0200
Facsimile: (858) 759-1906

Attorney for Plaintiff Stephen J. Charlton, PhD
individually, and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN J. CHARLTON, PhD, individually, and on behalf of all others similarly situated, | CASE NO: 3:21-CV-02142-CAB-JLB |
| Plaintiff, | FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT AND UNFAIR COMPETITION |
| v. | |
| LG ENERGY SOLUTION MICHIGAN, INC., and DOES 1-50, | Judge: Hon. Cathy Ann Bencivengo |
| Defendants. | Courtroom: 15A, 15th Floor |

**THIS IS A CLASS ACTION LAWSUIT.**

1. This is a class action lawsuit brought by the plaintiff Stephen J. Charlton, PhD (plaintiff or Charlton). The plaintiff bring this suit on his own behalf and for all those others similarly situated.

2. This class action is brought pursuant to section 1781 of the Civil Code and section 382 of the California Code of Civil Procedure. The monetary damages sought by the plaintiff, both individually and on behalf of the class, exceed the minimum jurisdictional limits of the Superior Court.

3. Venue is proper in San Diego because the defendants sold the solar battery at issue to Charlton for his home in San Diego.

4. Defendant LG ENERGY SOLUTION MICHIGAN, INC. (LGESMI) is a

1  corporation doing business in San Diego, California and other parts of California.

2      5.    The true names or capacities, whether individual, corporate, associate, or
3  otherwise, of defendants DOES 1 to 50, inclusive, are unknown to plaintiff, who therefore sue
4  said defendants by such fictitious names.

5      6.    Plaintiff is informed and believes and thereon alleges that the defendants
6  designated herein as a DOES are responsible in some manner for the events and happenings
7  herein referred to, and caused injury and damages proximately thereby to plaintiff as herein
8  alleged. Plaintiff will seek leave of court to amend this complaint to set forth the true names and
9  capacities of such named defendants when their identities become known to him.

10      7.    Plaintiff is informed and believes and thereon alleges that each defendant named
11  in this action, including DOE defendants, at all relevant times, was the agent, ostensible agent,
12  servant, employee, representative, assistant, joint venturer, and/or co-conspirator of each of the
13  other defendants, and was at all times acting within the course and scope of his, her, or its
14  authority as agent, ostensible agent, servant, employee, representative, joint venturer, and/or
15  co-conspirator, and with the same authorization, consent, permission or ratification of each of the
16  other defendants.

**FIRST CAUSE OF ACTION FOR VIOLATIONS OF**

**<u>THE CONSUMER LEGAL REMEDIES ACT</u>**

**(Against LGESMI and Does 1-30)**

20      8.    Charlton realleges all previous paragraphs as if again stated here.

21      9.    Prior to filing this suit, Charlton fully complied with Civil Code section 1782 and
22  requested LGESMI to take corrective measures and agree to provide compensation to Charlton
23  and those similarly situated in California. LGESMI has refused to take such measures. The
24  letters[1] sent by Charlton to LGESMI were sent on October 6, 2021, certified mail, return receipt
25  requested. Charlton's letters requested the following remedies:

---

[1]     Charlton sent more than one letter, which were identically worded, because the corporate form of LGESMI, and the responsible entity, as well as the agent for service of process, is unclear in corporate filings with the California Secretary of State.

1. LG[ESMI] must make reasonable efforts to identify all California consumers similarly situated, i.e, who purchased LG[ESMI] solar batteries in the past three years.

2. All consumers so identified must be notified that upon their request LG[ESMI] shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

3. LG[ESMI] must offer each of these consumers the option of either: (a) a full refund of the battery purchase price, and a full refund of the cost of the inverter, both with interest at ten percent from the date of purchase to the date of refund; or (b) replacement of each LG[ESMI] battery with a battery that will accomplish the objectives (of battery arbitrage and stored energy in the event of a power failure) that LG[ESMI] represented. The choice of option belongs to each consumer and each must be so notified.

4. LG[ESMI] must also compensate each class member for the lost battery arbitrage and loss of power failure backup power until such time as one of the options above is selected and the correction, repair, remedy and corrective action actually occurs.

5. LG[ESMI] must agree to these demands within a reasonable time and in no event more than 30 days from the date of this letter, even if implementation of the remedies then takes a reasonable time to accomplish.

6. LG[ESMI] must cease from engaging in the methods, acts, and practices specified above (i.e., violation of Civ. Code § 1770, subds. (a)(5), (7), (16)-(17)).

10. LGESMI responded to one of Charlton's CLRA letters on November 4, 2021. LGESMI's response referred to its "recall of certain . . . home batteries on December 16, 2020 [and] a second recall of additional . . . home batteries." These recalls are deficient for several reasons:

1. LGESMI has not made reasonable efforts to identify all California consumers similarly situated, i.e, who purchased LGESMI solar batteries in the past three years.

2. LGESMI has not notified all California consumers that upon their request LGESMI shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

3. LGESMI has not offered any of these consumers the option of either: (a) a full refund of the battery purchase price, and a full refund of the cost of the inverter, both with interest at ten percent from the date of purchase to the date of refund;

3

    or (b) replacement of each LGESMI battery with a battery that will accomplish the objectives (of battery arbitrage and stored energy in the event of a power failure) that LGESMI represented. LGESMI has <u>not</u> offered <u>any</u> consumer the option of remedy.

    Moreover, LGESMI has not replaced the vast majority of defective batteries and its recall is deficient because the replacement delay has been more than 12 months, while LGESMI is believed to be continuing to sell later generation solar batteries to new California consumers, rather that replacing the defective batteries already paid for by members of the class. (See paragraph 21, *post*.)

  4. LGESMI has <u>not</u> compensated each class member for (a) lost battery arbitrage and (b) loss of power failure backup power until such time as one of the options above is selected and the correction, repair, remedy and corrective action actually occurs. Moreover, LGESMI has <u>not</u> offered to compensate members of the class, in full, as requested by Charlton..

  5. LGESMI did <u>not</u> agree to any of the above-stated remedies sought by Charlton within a reasonable time and in no event more than 30 days from the date of Charlton's October 6, 2021 letters. LGESMI has continued not to provide, or offer, any of these requested remedies.

  6. LGESMI has <u>not</u> agreed to cease from engaging in the methods, acts, and practices specified in Charlton's October 6, 2021 letters (i.e., violation of Civ. Code § 1770, subds. (a)(5), (7), (16)-(17)).

  11. LGESMI and DOES 1-30 have marketed and sold LG RESU batteries in California in the three years prior to October 6, 2021. These batteries were sold and marketed to provide energy storage and backup power for homes.

  12. The batteries are designed to pair with a home solar system and connect directly to a storage-ready solar inverter for charging and discharging. The defendants, including LGESMI, advertised these batteries on their website, to various solar installation companies, and to consumers directly in pamphlets and brochures created by defendants to induce purchase of solar battery systems, which included required inverters. The defendants, including LGESMI, stated in these documents that during the day, when the sun is high in the sky, home solar systems produce more electricity than the house needs. That stored solar energy can be used to power the home later in the evening, after the sun sets and electricity rates are at their peak, which substantially

1  lowers electric bills. This is marketed by the defendants, including LGESMI, as "battery
2  arbitrage." The battery was also marketed by the defendants, including LGESMI, to provide
3  stored energy in the event of a power failure.

4  13. Charlton and all members of the class relied on defendants' representations, and
5  changed their position by purchasing LG battery systems at a cost of several thousands of dollars
6  each.

7  14. Based on information and belief, in the three years before the date of this letter,
8  defendants have sold battery storage systems that do not work as represented to thousands of
9  Californians. These batteries are dangerous and several have caused fires and property damage.
10 Because of these safety concerns most, if not all, of these batteries, have been taken out of
11 service. Other batteries may be operating but pose a dangerous safety risk. Charlton and all
12 similarly situated class members have therefore lost the benefit of their battery system
13 purchase—namely the ability to (1) store energy during the day and then use that stored energy
14 when electric companies charge the highest electricity rates later in the day, (2) use stored energy
15 in the event of a power failure, and (3) to do so safely.

16 15. The California Consumers Legal Remedies Act ("CLRA") prohibits a variety of
17 specified unfair or deceptive acts "in a transaction intended to result or which results in the sale
18 or lease of goods or services to any consumer." The purpose of the CLRA is to protect consumers
19 against these acts and "to provide efficient and economical procedures to secure such protection."
20 Civil Code section 1770 specifies unfair or deceptive practices and prohibits transactions
21 undertaken by any person (or company) in a transaction intended to result or that results in the
22 sale or lease of goods or services to any consumer. That law provides, in relevant part:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:
>
> . . .
>
> (5) Representing that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are

> of another.
>
> . . .
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.
>
> (17) Representing that the consumer will receive a[n] . . . economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

16. Civil Code section 1760 provides: "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

17. By representing that their batteries are safe for use in homes, and provide the ability to (1) store energy during the day and then use that stored energy when electric companies charge the highest rates, (2) use stored energy in the event of a power failure, and (3) to do so safely, when these representations are untrue, defendants have violated the CLRA.

18. Charlton will seek class certification pursuant to Civil Code section 1781, because (a) it is impracticable to bring all members of the class before the court, (b) the questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members, (c) the claims or defenses of the representative plaintiff is typical of the claims or defenses of the class, and (d) Charlton will fairly and adequately protect the interests of the class. (Civ. Code, § 1781, subds. (b)(1)-(4)).

19. Charlton and all members of the class have been damaged by (1) loss of battery arbitrage during all or most of the summer months in 2021; (2) the inability to have stored energy available in the event of a power failure; and (3) concern that their homes may be susceptible from fire cause by defendants' batteries. Alternatively, Charlton and the plaintiff class are entitled to damages pursuant to Civil Code section (a)(1). Finally, because some of the plaintiff class, including Charlton, is age 65 or over, they are entitled to an additional $5,000 pursuant to Civil Code section 1780, subdivision (b)(1).

20. Additionally, defendants should be ordered by the court to take the following action:

a. Defendants must make reasonable efforts to identify all California consumers similarly situated, i.e, who purchased LG solar batteries in the past three years.

b. All consumers so identified must be notified that upon their request LG shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

c. Defendants must offer each of these consumers the option of either: (a) a full refund of the battery purchase price, and a full refund of the cost of the inverter, both with interest at ten percent from the date of purchase to the date of refund; or (b) replacement of each LG battery with a battery that will accomplish the objectives (of battery arbitrage and stored energy in the event of a power failure) that LG represented. The choice of option belongs to each consumer and each must be so notified.

d. Defendants must also compensate each class member for the lost battery arbitrage and loss of power failure backup power until such time as one of the options above is selected and the correction, repair, remedy and corrective action actually occurs.

e. Defendants must cease from engaging in the methods, acts, and practices specified above (i.e., violation of Civ. Code § 1770, subds. (a)(5), (7), (16)-(17)).

21. Based on information and belief, the conduct of defendants, including LGESMI, through its managing agents, was despicable and was carried on by them with willful and conscious disregard for the rights of Charlton and the class. For example, LGESMI has admitted that its batteries are defective and offered to replace some of them of these batteries. However, based on information and belief, LGESMI has not done so for a period of approximately one year, claiming the inability to obtain adequate replacement component parts, while at the same time selling new, non-defective batteries to new customers. The defendants were aware of the probable dangerous consequences of their conduct and willfully and deliberately failed to avoid

those consequences. This conduct constitutes malice, oppression and fraud such that the plaintiff is entitled pursuant to California Civil Code section 3294 to recover punitive damages in an amount sufficient to punish and set an example of these defendants.

## SECOND CAUSE OF ACTION FOR VIOLATION OF
## BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.
**(Against LGESMI and Does 31-50)**

22. Charlton realleges all previous paragraphs as if again stated here, including paragraphs 9-21.

23. By engaging in the conduct specified above, the defendants have violated Business and Professions Code section 17200 because they have engaged in unfair business acts and practices, unlawful business acts and practices, and unfair, deceptive, untrue or misleading advertising in the four years before this complaint was filed.

24. As a result of defendants' conduct, these business acts and practices have resulted in ill-gotten gains, including plaintiff's money and property, and the money of the class, in the four years before this complaint was filed.

25. Charlton, on behalf of himself and those similarly situated, seeks to enjoin defendants from any further violations and to restore money which may have been acquired by means of the unfair competition.

26. Charlton will seek class certification pursuant to Civil Code section 382, because (a) it is impracticable to bring all members of the class before the court and use of the class vehicle will result in substantial benefit to the litigants and the court, (b) the questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members, (c) the claims or defenses of the representative plaintiff is typical of the claims or defenses of the class, and (d) Charlton will fairly and adequately protect the interests of the class.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. For compensatory damages on the first cause of action;

    2.     That the court order the following additional relief:

          a.     Defendants must make reasonable efforts to identify all California consumers similarly situated, i.e, who purchased LG solar batteries in the past three years.

          b.     All consumers so identified must be notified that upon their request LG shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.

          c.     Defendants must offer each of these consumers the option of either: (a) a full refund of the battery purchase price, and a full refund of the cost of the inverter, both with interest at ten percent from the date of purchase to the date of refund; or (b) replacement of each LG battery with a battery that will accomplish the objectives (of battery arbitrage and stored energy in the event of a power failure) that LG represented. The choice of option belongs to each consumer and each must be so notified.

          d.     Defendants must also compensate each class member for the lost battery arbitrage and loss of power failure backup power until such time as one of the options above is selected and the correction, repair, remedy and corrective action actually occurs.

          e.     Defendants must cease from engaging in the methods, acts, and practices specified above (i.e., violation of Civ. Code § 1770, subds. (a)(5), (7), (16)-(17)).

    3.     For attorney fees;

    4.     For injunctive relief on both causes of action;

    5.     For punitive damages on the first cause of action;

    6.     For costs of suit; and

    7.     For such other and further relief as the court deems just and proper.

///

///

| | | |
|---|---|---|
| 1 | Dated: January 24, 2022 | **LAW OFFICE OF MICHAEL A. CONGER** |
| 2 | | |
| 3 | | By:  /s/ Michael A. Conger |
| 4 | | Attorney for Stephen J. Charlton, PhD, both individually and on behalf of those similarly situated |
| 5 | Jury trial demanded. | |