# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN J. CHARLTON, PhD, individually and on behalf of all others similarly situated,<br><br>                            Plaintiff,<br><br>v.<br><br>LG ENERGY SOLUTION MICHIGAN, INC., and DOES 1–50,<br><br>                           Defendant. | Case No.: 3:21-cv-02142-RBM-JLB<br><br>**ORDER GRANTING LG ENERGY SOLUTION MICHIGAN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Doc. 11]** |

On February 15, 2022, Defendant LG Energy Solution Michigan, Inc. ("Defendant") filed a Motion to Dismiss Plaintiff Stephen J. Charlton's ("Plaintiff") First Amended Complaint ("Motion"). (Doc. 11.) Plaintiff filed an opposition to the Motion on March 8, 2022 (Doc. 12), and Defendant filed a reply on March 15, 2022 (Doc. 15). For the reasons discussed below, Defendant's Motion is **GRANTED**.

## I.     BACKGROUND

### A.    Procedural Background

On November 12, 2021, Plaintiff filed a class action complaint against Defendant in the Superior Court of the State of California for the County of San Diego on behalf of himself and all others similarly situated. (*See* Doc. 1–2.) On December 29, 2021,

Defendant removed the action to this Court (Doc. 1), and Plaintiff subsequently filed a First Amended Compliant ("FAC") on January 24, 2022 (Doc. 8). The FAC asserts the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. (*Id.* at 2–8.) On February 15, 2022, Defendant filed the instant Motion requesting the Court dismiss Plaintiff's FAC with prejudice and without leave to amend. (Doc. 11–1.)

### B. Factual Background

The FAC alleges that Defendant marketed and sold LG Residential Energy Storage Unit ("RESU") batteries in California "to provide energy storage and backup power for homes." (Doc. 8 at 4.) "The batteries are designed to pair with a home solar system and connect directly to a storage-ready solar inverter for charging and discharging," and Defendant advertised that the "stored solar energy can be used to power the home later in the evening, after the sun sets and electricity rates are at their peak, which substantially lowers electric bills." (*Id.* at 4–5.) The RESU batteries were also marketed by Defendants to provide stored energy in the event of a power failure. (*Id.* at 5.) Plaintiff and members of the class "relied on [Defendant's] representations" and purchased RESU batteries which cost "several thousands of dollars each." (*Id.*) The FAC claims "[Defendant] has admitted that its batteries are defective and offered to replace some . . . of these batteries. However, based on information and belief, [Defendant] has not done so for a period of approximately one year." (*Id.* at 7.)

Defendant explains that on and December 16, 2020 and August 4, 2021, in conjunction with the U.S. Consumer Product Safety Commission ("CPSC"), Defendant announced voluntary recalls of RESU batteries purchased by consumers in the United States, including consumers who are residents of California. (Doc. 11–1 at 7.) "At the same time, [Defendant] stopped selling RESU batteries that incorporated the battery cells within the scope of the recall program." (*Id.*) Defendant announced the recall "due to the potential for overheating (which occurred in very rare instances)." (*Id.*) Defendant

presented the recall program to the CPSC under the agency's Fast Track Recall Program and, "[a]fter thorough review, the CPSC approved [Defendant's] proposed program and continues to monitor its progress." (*Id.* at 7–8.) "Under the terms of the recall, [Defendant] has offered to replace RESU batteries with new replacement battery units, coupled with a new 10-year warranty." (*Id.* at 8.) Moreover, "any affected consumers will receive new batteries, the useful lives of which will extend longer than existing batteries, and which will be covered by warranties that will extend for years longer than the warranties on the recalled batteries." (*Id.*) "These recalls were publicly announced, widely disseminated to [Defendant's] distributors and customers, and remain fully disclosed on the websites of ESMI, the CPSC, and in numerous other sources." (*Id.*)

Defendant asserts that "[n]otwithstanding these express public commitments," on October 6, 2021, Plaintiff served Defendant with a letter in which he provided a demand of requested remedies and threatened suit for damages ("Notice Letter").[1] (*Id.*) On November 4, 2021, Defendant provided a written response advising Plaintiff of the recall program and its commitment to provide a remedy through the program ("Response Letter"), and on November 12, 2021, Plaintiff filed the instant action in San Diego Superior Court. (*Id.*; *see* Doc 1–2.) Thus, Defendant's Motion argues the FAC should be dismissed

---

[1] Plaintiff's Notice Letter makes six demands including that: (1) Defendant make reasonable efforts to identify all California consumers who purchased the RESU battery in the past three years; (2) all identified consumers be notified that Defendant shall make the appropriate correction, repair, replacement, or other remedy; (3) Defendant offer each identified consumer the option of a full refund of the RESU battery purchase price and full refund of the cost of the inverter with interest at ten percent from the date of purchase to date of refund, or a replacement of the RESU battery; (4) Defendant compensate each class member for the lost battery arbitrage and loss of backup power until such time as one of the options above is selected and the correction, repair, remedy, and corrective action actually occurs; (5) Defendant must agree to these demands within a reasonable time and no later than thirty days from the date of the Notice Letter; and (6) Defendant must cease from engaging in methods, acts, and practices specified above. (Doc. 8 at 3; *see also* Doc. 11–1 at 10–11.)

because: (1) in light of Defendant's November 4, 2021 response letter and public recall, Plaintiff's claims are moot and cannot satisfy the threshold case and controversy requirements of Article III; (2) in light of the fact that the CPSC has approved and continues to closely monitor the recall program, the action should be dismissed under the doctrine of prudential mootness; (3) Plaintiff's UCL claim is devoid of any plausible allegation of unlawful, unfair, or fraudulent conduct; and (4) Plaintiff's claims for injunctive relief fail and Plaintiff cannot allege his legal remedies are inadequate. (Doc. 11–1 at 9.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). Consequently, a "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted). "For the purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); see also *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000)

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.  DISCUSSION

A.  <u>Request for Judicial Notice</u>

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(d). A court may, however, consider materials subject to judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). A court may also take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted). Finally, under the incorporation by reference doctrine, courts may "take into account

documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted). The incorporation by reference doctrine "treats certain documents as though they are part of the complaint itself," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), so long as "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

Defendant requests the Court take judicial notice of four exhibits: (1) a copy of Defendant's December 16, 2020 Home Energy Storage Batteries Recall in Conjunction with the CPSC (Ex. 1); (2) a copy of Defendant's August 4, 2021 Home Energy Storage Batteries Recall in Conjunction with the CPSC (Ex. 2); (3) a copy of Plaintiff's October 6, 2021 Notice Letter to Defendant (Ex. 3), and (4) a copy of Defendant's November 4, 2021 Response Letter to Plaintiff (Ex. 4). (Doc. 11–2 at 2.) Plaintiff filed an objection to Defendant's request for judicial notice. (*See* Doc. 12–1.) In particular, Plaintiff opposes judicial notice of Defendant's Response Letter because Plaintiff disputes the contents of the letter. (*Id.* at 2.) For example, the letter provides Defendant has issued press releases and contacted thousands of users, but "this does not establish reasonable efforts to identify and notify all affected California consumers." (*Id.*)

The Court takes judicial notice of images of Defendant's December 16, 2020 Home Energy Storage Batteries Recall in Conjunction with the CPSC in Exhibit 1 and Defendant's August 4, 2021 Home Energy Storage Batteries Recall in Conjunction with the CPSC in Exhibit 2. Fed. R. Evid. 201(b); *see U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations omitted); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG POR, 2009 WL

6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("[i]nformation on government agency websites has often been treated as properly subject to judicial notice"). The Court also takes judicial notice of Plaintiff's October 6, 2021 Notice Letter to Defendant in Exhibit 3. Plaintiff's Notice Letter is referenced several times in the FAC and no party questions its authenticity. *See Doe v. Successfulmatch.com*, No. 13-CV-03376-LHK, 2014 WL 1494347, at *2 (N.D. Cal. Apr. 16, 2014) ("[w]hile a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint").

The Court will consider Defendant's November 4, 2021 Response Letter to Plaintiff pursuant to the incorporation by reference doctrine. *Khoja*, 899 F.3d at 1002 (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"). The FAC references Defendant's Response Letter (*see* Doc. 8 at 3), and the CLRA provides that "[n]o action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." CAL. CIV. CODE § 1782. Moreover, it seems Plaintiff does not question the existence or authenticity of the Response Letter, but rather the truth of its contents. (Doc. 12–1 at 2–3.) However, the Court is not bound to take judicial notice of the truth of the matters asserted therein. *See Khoja*, 899 F.3d at 999 ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth").

B. Article III Standing

Defendant argues that Plaintiff's CLRA and UCL claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because there is no live case or controversy as required under Article III of the United States Constitution. (Doc. 11–1 at 15.) Defendant's "recall program already addresses and remedies the alleged battery defect (and the alleged harm flowing from the defect) on which [Plaintiff] bases all of his claims,

1 | thus eliminating any injury and rendering the claims moot." (*Id.*)

2 | Defendant claims they have already agreed to all remedies Plaintiff requested and is entitled to under the law including that: (1) Defendant has taken reasonable efforts to identify all California consumers who purchased their solar batteries in the past three years; (2) Defendant has notified all identified consumers that Defendant will make the appropriate replacement through CPSC's Fast Track Recall program; (3) Defendant has offered consumers battery replacements "that will not only be free of the alleged defect, but the useful lives of which will extend longer than existing batteries, and which will be covered by warranties that will extend for years longer than the warranties on the recalled batteries"; (4) Defendant has discontinued the sale of the batteries at issue; and (5) Defendant has agreed to Plaintiff's demands in the Response Letter, which followed within 30 days of Plaintiff's Demand Letter. (Doc. 11–1 at 17.) Defendant contends that, "[u]nder clear CLRA precedents, when there is no plausible allegation that the recall is deficient, [there] are no further remedies [Plaintiff] is entitled to under the law." (*Id.* (citing *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*, 915 F. Supp. 2d 1151, 1157 (C.D. Cal. 2013).) To properly allege deficiency of the recall, Plaintiff would need to allege facts indicating the replacement battery he would receive from Defendant's recall program would remain defective. (Doc. 11–1 at 18 (citing *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *5 (N.D. Cal. Aug. 21, 2019).) Defendant concludes that because the recall program "already addresses and remedies the alleged battery defect on which [Plaintiff] bases all of his claims, and because [Plaintiff's FAC] is still devoid of any allegation that [Defendant's] recall program is deficient, [Plaintiff's] claims should be dismissed as moot under Article III." (Doc. 11–1 at 19.)

Plaintiff counters that Defendant's recall program is deficient because it "[does] not address [Plaintiff's] specific remedy requests" and that whether Defendant's recall program is sufficient raises a question of fact not determinable in a motion to dismiss. (Doc. 12 at 15.) Plaintiff provides the alleged deficiencies in Defendant's recall program include the following: (1) Defendant has not made reasonable efforts to identify all

California consumers similarly situated; (2) Defendant has not notified all California consumers that upon their request Defendant shall make the appropriate repair, replacement, or other remedy; (3) Defendant has not offered each identified consumer the option of a full refund of the RESU battery purchase price and full refund of the cost of the inverter with interest at ten percent from the date of purchase to date of refund, or a replacement of the RESU battery; (4) Defendant has not compensated each class member for the lost battery arbitrage and loss of backup power until such time as one of the options above is selected and the correction, repair, remedy, and corrective action actually occurs; (5) Defendant did not agree to these demands within a reasonable time; and (6) Defendant has not agreed to cease from engaging in methods, acts, and practices specified in the Demand Letter. (Doc. 12 at 16.) Specifically, Plaintiff notes that Defendant "has *not* offered refunds (or interest), as requested by [Plaintiff]. Refunds, or restitution, is expressly permitted by the CLRA" and Defendant "has *not* replaced most of its defective batteries." (*Id.* at 18.)

In reviewing the December 16, 2020 and August 4, 2021 recall announcements Defendant released in conjunction with the CPSC, the Court finds Defendant has made reasonable efforts to correct the RESU battery defect. *See Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213, 1220 (E.D. Cal. 2016) (rejecting the plaintiff's argument "that the Court does have subject matter jurisdiction because Plaintiffs challenged the adequacy of the recall program" and finding that the defendants adequately detailed "the comprehensive nature of the recall program"). Here, Plaintiff asserts that Defendant's recall program is insufficient for several reasons, including that Defendant has not offered refunds. (Doc. 12 at 12, 15–16, 18–20, 25.) However, Defendant has notified consumers that they will receive replacement products through the CPSC's Fast Track Recall program, and CPSC is monitoring the progress of the recall program. (Doc. 11–1 at 8–9, 17.) Thus, the Court finds that Plaintiff has not adequately pled how Defendant's recall program is insufficient, and Plaintiff cannot elect his preferred remedy. *See Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *5 (N.D. Cal. Aug. 21, 2019)

(finding that "Plaintiffs acknowledge that, through the recall process, Ford has voluntarily provided a remedy free of charge" and "Plaintiffs have not plausibly alleged that Ford's recall remedy will fail to cure the [d]efect"); *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2019 WL 1765817, at *8 (N.D. Cal. Apr. 22, 2019) (holding the plaintiff did not allege facts that the recalls were deficient).

Moreover, the Court agrees with Defendant that "[t]he fact that [Defendant] has not yet replaced all of its allegedly defective batteries is not a bar to dismissing [Plaintiff's] claims as moot." (Doc. 11–1 at 18.) Plaintiff's Notice Letter was served on October 6, 2021, and Defendant furnished its Response Letter on November 4, 2021. (Doc. 11–1 at 10–11); *see* CAL. CIV. CODE § 1782 ("[n]o action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice"); *see also Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1200 (S.D. Cal. 2021) (explaining that "[p]rior to filing an action for damages, the CLRA requires a plaintiff to provide notice to a defendant of the CLRA violations by certified or registered mail 30 days or more before filing an action" and that "[i]f the defendant corrects the alleged wrongs or indicates it will make corrections within a reasonable time, the plaintiff cannot file a suit seeking damages").

Here, Defendant provided a timely response to Plaintiff and had already initiated its recall program, which is being monitored by CPSC, and will provide replacement products and renewed warranties to consumers. (Doc. 11–1 at 7–8.) Therefore, Plaintiff's CLRA and UCL claims should be dismissed because there is no live case or controversy as required under Article III. The Court finds that Defendant's recall program adequately addresses and remedies the alleged RESU battery defect and, thus, any alleged injury on which Plaintiff bases is claims appears to be moot. *See Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009) (holding that "plaintiffs could not demonstrate an 'injury in fact,' which is a prerequisite to asserting a claim under the UCL" and "without any showing of damage, plaintiffs had no standing to sue under the CLRA"). Absent proper allegations

that the recall program is somehow deficient, Plaintiff's FAC is insufficient to survive Defendant's Motion.

### IV.  CONCLUSION

Based on the foregoing, the Court:

1. **GRANTS** Defendant's Motion.  (Doc. 11.)
2. **DISMISSES** Plaintiff's FAC.
3. **GRANTS** Plaintiffs twenty-one (21) days leave from the date of this Order in which to file an amended complaint which cures all the deficiencies of pleading noted.  If Plaintiff chooses not to file an amended complaint by then, the Clerk of Court shall close this case.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("[i]f a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action").

**IT IS SO ORDERED.**

DATE:  January 31, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

11

3:21-cv-02142-RBM-JLB